UNITED STATES DISTRICT COURT
**DISTRICT OF RHODE ISLAND**

CR 04-43ML

EDGAR A. MEDINA,
Movant,
vs.

CASE NO. ____________

UNITED STATES OF AMERICA,
Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**PURSUANT TO 28 U.S.C. § 2255**

**Edgar A. Medina**, movant pro se in the above-entitled action (hereinafter "Medina"), respectfully represents unto this honorable court the following as his Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255. Medina was convicted in the U. S. District Court for the District of Rhode Island on August 13, 2004. He duly appealed his conviction and sentences to the U. S. Court of Appeals for the First Circuit. The appellate court affirmed Medina's conviction but vacated his sentence and remanded him for resentencing on October 25, 2005. Resentencing was accomplished on July 25, 2006. Medina duly filed an appeal to vacate that sentence, which was denied. Medina duly filed a petition for writ of certiorari in the Supreme Court of the United States. The Supreme Court issued a letter denying the petition for writ of certiorari on October 1, 2007. Accordingly, Medina now files this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, well within the statute of limitations for such action. Title 28 U.S.C. § 2255 confers

jurisdiction upon sentencing courts to adjudicate collateral matters such as those raised herein filed in accordance with the statute.

## ISSUES PRESENTED FOR REVIEW

1. Whether Medina received effective assistance of counsel when he clearly requested a motion to suppress and trial counsel refused to do make one.

2. Whether Medina received effective assistance of counsel when his counsel refused to object to prejudicial evidence of prior bad acts, prior convictions, and pending cases.

3. Whether Medina received effective assistance at sentencing when his trial counsel refused to adequately prepare for sentencing and failed to review the P.S.R. with defendant before the day of sentencing.

4. Whether Medina received effective assistance when trial counsel failed to object to erroneous jury instruction regarding the standard of proof required for the § 924 (C)(1)(A) charge and whether the evidence provided regarding possession of a firearm while trafficking narcotics was sufficient to convict under § 924 (c)(1)(A).

5. Whether or not there was a conflict of interest that deprived Medina of conflict-free counsel when trial counsel was being investigated for violations of law ongoing during his representation of Medina for which counsel was ultimately indicted.

6. Whether Medina is entitled to a two point offense level reduction in light of the recent U.S. Sentencing Guidelines Commission's reduction of the base offense level for crack cocaine offenses such as the one for which Medina was sentenced.

## STATEMENT OF THE CASE

### 1. Nature of the case

On February 7, 2004, Iyonna Washington, an ex-girlfriend of the defendant, called the police to report that he had broken her car's front windshield with a silver handgun. The police arrived to investigate. She directed them to an apartment building located at 114 Waverly Street, Providence RI. There, police confronted a Tammy Foster, Medina's girlfriend at the time of the incident and the renter of an apartment where Medina resided. The police repeatedly requested permission to enter the apartment to search for Medina until it was granted. The officers then went upstairs, knocked on the door and Medina opened the door. He was arrested and put in a police cruiser. The arresting officer later alleged that Medina spontaneously made incriminating statements while in the cruiser.

The police allegedly also obtained consent from Ms. Foster to search the apartment. The officer found a Nike shoe box under the bed that contained a quantity of cocaine, heroin, marijuana, and a black handgun. The box also contained Medina's court papers as well as a letter addressed to Ms. Foster from Medina. Medina's fingerprints were found on three bags of heroin and one bag of marijuana. Ms. Foster was not charged and did not testify at trial.

Based on what was found in the apartment, the government obtained an indictment against Medina for the firearm and narcotics. The government proceeded with the case against Medina. After a three day jury trial, Medina was convicted on all counts and sentenced to 188 months imprisonment for the narcotics and an additional

60 months for the firearm.

**2. Course of proceedings and Disposition in the Court Below**

On April 7, 2004, the Grand Jury returned four charges against Medina. Count I alleged that on or about February 7, 2004, Medina did knowingly and intentionally possess with intent to distribute in excess of fifty grams of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). Count II alleged that on or about February 7, 2004, Medina did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(c). Count III alleged that on or about February 7, 2004, Medina did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(d). Count IV alleged that on or about February 7, 2004, Medina in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States did knowingly and intentionally possess a firearm, to wit: a FMJ, 9mm semi-automatic pistol, model M-11, serial number 94-0001698, in violation of U.S.C. § 924 (c)(1)(A). After a three day jury trial, Medina was convicted on all counts. (III. 66-67)

**3. Statement of Facts**

On February 7, 2004, two Providence Police Department police officers, Furtado and Decastro, responded to a 911 call at 114 Waverly Street Providence, RI. Iyonna Washington had reported that an individual had broken her car's front windshield. (I. 54)[1] She identified Medina as the person who broke her windshield. (I. 54-62)[2]

At the scene the officers encountered Medina's girlfriend Tammy Foster, who was the renter of the second floor apartment at 114 Waverly St. (I. 26-55) The officer asked Ms. Foster if Medina was in the apartment, she replied that he was not. (I. 55) The police asked Ms. Foster if they can look for Medina, she refused. (I. 57) They attempted to enter the second floor apartment, but the door was locked. They knocked on the second floor apartment door and Medina opened the door for the officers. (I. 28) He was asked to step out the apartment with which request he complied. (I. 30) Medina was arrested handcuffed and placed in a cruiser. (I. 30) While in the cruiser Decastro testified that Medina was pointing his finger at Ms. Washington and said to her that he was going to "fuck her up," (I. 70) and that he was going to tell the judge that the gun belonged to his younger brother. (I. 70) On cross-examination Decastro testified that he must have made a mistake because there was no way that Medina could have been pointing at Ms. Washington with his hands behind his back. (I. 76)

---

[1] Reference to the record on petitioner's motion are as follows: to the transcript of trial in three volumes, by number of volume and page (as by I. 7); to the transcript of the sentencing hearing by Sent. and page (as by Sent. 17); and to the appendix bound with this motion by A. and page (as by A. 6).

[2] According to the discovery provided to defense counsel, Ms. Washington recanted her story and refused to testify at the Grand Jury. (A. 9)

Furtado remained in the apartment and sought permission from Ms. Foster to search the apartment. She initially refused, but eventually consented after multiple requests. (I. 31)(I. 14) There were also three juveniles in the apartment. (I. 31) Furtado searched a bureau located in one of the bedrooms. In one of the drawers he found court documents that belonged to Medina. There was also men's clothing found in that drawer. The government submitted and the court admitted in evidence all the court documents pertaining to Medina without objection from defense counsel.[3] (I. 38-42)(A. 3-5) The judge did not give a cautionary instruction. (I. 38) The officers also found 780 dollars in U.S. currency in one of the drawers along with female clothing. (I. 43) Also on the dresser that contained female clothing was a Tanita digital scale. (I. 108)

Furtado searched under the bed and found a Nike shoe box. (I. 45) He testified that the box was partially open and with the aid of a flashlight he could see what appeared to be the butt of a gun. (I. 45) He opened the box and found what he believed to be a Tech 9 with a loaded clip. (I. 45) Narcotics detective Patridge arrived on the scene to retrieve the contents of the box. (I. 148) He reviewed the contents of the box and observed a black handgun, a large bag of cocaine, a bag that contained 16 smaller bags of cocaine, a box of Glad sandwich bags, a smaller gray box which contained 23 bags of marijuana, a razor blade and several documents including court documents of Medina's and a letter addressed to Ms. Foster from Medina. (I. 90-97) The government submitted and the court admitted as evidence these additional documents belonging to Medina without objection from defense counsel.[4] (I. 100-01, 116, A. 6-7)

---

[3] Exhibit 7, 8, 9

[4] Exhibit 21, 22

Again, no cautionary instruction was given.

All the items were tested for fingerprints. Median's fingerprints were found on three bags of heroin and one bag of marijuana. Trial counsel did not challenge the fingerprint evidence. No identifiable fingerprints were found on the other items.

## SUMMARY OF THE ARGUMENTS

**1. Medina was denied effective assistance of counsel when trial counsel refused to file a motion to suppress evidence under Federal Rule of Criminal Procedure (FRCP) 12 (b)(3)(c), despite Medina's request that he do so.**

Medina was arrested on February 7, 2004, and was indicted on April 7, 2004. On March 29, 2004 Medina typed a note for trial counsel explaining that he felt that it would be in his best interest for counsel to file a motion to suppress evidence that was obtained in violation of the Fourth Amendment. Medina wanted the motion filed because the police did not have probable cause or voluntary consent to search the apartment in which he stayed with his girlfriend and in which the drugs and gun with which he was charged were found. Trial counsel did file a motion for an extension of time in which to file for a suppression hearing, but a motion to suppress was never filed. Medina had good grounds to file for such motion due to the circumstances; Medina lived at that apartment and had clothing and very important court documents amongst other things there. Accordingly, it was a home were Medina had an expectation of privacy, and a motion to suppress evidence taken there without a warrant or permission was a reasonable request.

**2. Medina was denied effective assistance of counsel when trial counsel refused to object to impermissible and highly prejudicial evidence and refused a cautionary instruction offered by the judge.**

Medina's court papers were found in a bureau and in a Nike shoe box which also contained the gun and narcotics. The government sought to introduce these documents as evidence and the court admitted them. Trial counsel did not object and refused a cautionary instruction. Counsel stated that Medina was going to testify anyway. The judge allowed these documents into evidence and to be highlighted on the screen. Medina did not testify. Other than Medina's name the content of the information was not probative and was prejudicial. The impermissible evidence went directly to Medina's propensity to commit crimes. The evidence was not overwhelming for the government, and the prejudicial content was not necessary..

**3. Trial counsel refused to adequately prepare for sentencing and failed to review the P.S.R. with Medina.**

Medina was convicted on August 13, 2004; sentencing was sheduled for November 5, 2004. The draft pre-trial sentencing report (P.S.R.) was completed on October 27, 2004. On the day of sentencing, trial counsel informed the court that he did not have the date on his calendar. Furthermore, he reviewed the P.S.R. with his client for the first time on the day of sentencing, that very morning. Moreover, counsel's argument for leniency consisted of nothing more than what was written in the P.S.R.: that his 19 year old client had a history of mental illness, including feeling suicidal at the

time of the offense; that he did not know his father and his mother was a frequent drug user for whom he at times had to obtain narcotics. In addition, the P.S.R. fixed Medina's criminal history at category V based largely on his prior juvenile record. His only conviction as an adult was for driving without a license and eluding police. But for trial counsel's grossly inadequate preparation, his client would have likely received a lesser sentence.[5]

**4. Trial counsel failed to object to erroneous jury instruction as to Count IV that mischaracterized the evidence provided regarding possession of a firearm while trafficking narcotics as sufficient to secure a conviction under 924 (c)(1)(A).**

Medina's conviction under 924 (c)(1)(A) cannot stand due to the insufficiency of the evidence provided at trial. 924 (c)(1)(A) requires evidence sufficient to show active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense. Mere possession does not amount to "use," nor does having a gun and drugs stored together. In this case, police found a gun and narcotics under a bed in a Nike shoe box. There was never any evidence at trial to prove that Medina "used" or "actively employed" the firearm in furtherance of a drug trafficking crime. Trial counsel was aware of the insufficient evidence and of the incorrect jury instruction and failed to object to it.

---

[5] Note: Medina got the opportunity to get resentenced under Booker, 125 S. Ct. 738 (2005); see United States v. Edgar Medina, 427 F. 3d 88; U.S. App. Lexis 23009; resentencing was imposed on July 25, 2006.

**5. Counsel's divided loyalties raised a conflict of interest that prevented him from effectively assisting Medina.**

While Medina was going through criminal proceedings, trial counsel was being investigated for his own wrongdoing by the Federal Bureau of Investigation. He was ultimately indicted on January 4, 2007. According to trial counsel's indictment, dates in which criminal activity was taking place coincide with Medina's trial dates. Tactics were inherently in conflict with and not undertaken due to the attorney's other interest and loyalties, his effort to protect himself, and his preoccupation with his own affairs.

**6. New U.S. Sentencing Guidelines (U.S.S.G.) regarding the sentence of crack cocaine became effective November 1, 2007, and retroactive thereafter. Medina petitions this Honorable Court to consider the new guidelines, and a reduction of sentence due to the two point reduction in the base offense level.**

## ARGUMENTS AND AUTHORITIES

**1. Medina Received Ineffective Assistance of Counsel When Trial Counsel Refused to File a Motion to Suppress Under Rule 12 (B)(3)(c). Despite Medina's Clear Request For Such a Motion.**

Medina was arrested on February 7, 2004. After being transferred from the Adult Correctional Institution to the Donald W. Wyatt Detention Facility on March 17, 2004, Medina began to do research on the charges that he is currently being held for.

While doing so, Medina encountered a case that he knew pertained to his circumstances. As a result, on March 29, 2004, Medina sent a letter to defense counsel respectfully requesting of him that he file a motion to suppress evidence of an illegal search and seizure of his residence, making reference to a case; *United States v. Torres*, 247 F. Supp. 2d 146 (D.R.I. 2003). (A. 10) Defense counsel filed a motion for an extension of time to prepare for a motion to suppress. (A. 11) However, defense counsel never fulfilled his clients request to file a motion to suppress. Defense counsel refused to file such a motion, apparently because Medina owed him money that he was not in a position to pay.

In this case at hand, Medina undoubtedly had an expectation of privacy and an interest in the items seized from the residence in which he was arrested. According to Furtado's police report, he enters a bedroom and starts to search a bureau drawer which he finds men's clothing and court papers belonging to Medina. Then he looks under a bed and finds a Nike shoe box which contained: cocaine, marijuana, heroin, and a handgun. (A. 14) In addition, Furtado also testified that he found: Tee-shirts, underwear, socks, undergarments, and court papers pertaining to Medina in one drawer that particularly contained men's clothing. (I. 36)

> Rule 41 (A): "Property," includes documents, books, papers, tangible objects, and information.
>
> The Fourth Amendment provides: "The right of the people to be secure in their persons, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Medina attacks the search of Ms. Foster's and his residence in which he was living at the time he got arrested. The first and most significant hurdle he must overcome is his standing to challenge the search at all. The Supreme Coiurt has held that: "[T]he capacioty to claim the protection of the Fourth Amendment depends...upon the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson,* 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) quoting *Rakas v, Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). An individual's "subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." Id. at 95-95 (internal quotations and citations omitted). In *Olson*, the Supreme Court established that overnight guests have an expectation of privacy in their host's home. *Olson*, supra, at 94. While *Minnesota v. Carter* 525 U.S. 83, 142 L.Ed.2d 373, 380 (1998), notes that the idea that "anyone legitimately on the premises where a search occurs may challenge its legality was expressly repudiated in *Rakas v. Illinois*, supra, it still held that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." See Carter, 525 U.S. at 381.

In the case at hand, Medina did have the right to invoke the protection of the Fourth Amendment; due to trial counsel's refusal to file a motion to suppress, Medina was deprived of the opportunity to prove to this court that he did have an expectation of privacy in the residence, and that it was illegally searched. Fulfilling Medina's request to file a motion to suppress, this issue would had been resolved.

See *United states v. Paradis*, 351 f. 3d 21 (1st Cir. 2003); *United States v. Torres*, 247 F. Supp. 2d 146 (D.R.I. 2003); *United States v. George L. Medina*, 451 F. Supp. 2d 262 (1st D.M.A. 2006).

If letters and private documents can thus be seized, and held, and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring the citizen's right to be secure against unreasonable searches and seizures is of no value; see *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

To state facts sufficient for a finding of an "adverse effect," a defendant must show (1) the lawyer could have pursued a plausible alternative strategy or tactic and (2) the alternative strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties. In Cuyler, Infra, requires the court to find merely that something favorable to the defendant *could* have occurred-- as opposed to *would* have occurred in absence of the conflict. Petitioner is not required to show prejudice where an actual conflict is proven; see *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), *Strickland v. Washington*, 466 U.S. 668 104 S. Ct. 2052 (1984). It is clear from the record that trial counsel could have pursued a plausible alternative strategy, and that an alternative strategy was inherently in conflict with or not undertaken due to an actual conflict of interest that existed between Medina and defense counsel. Therefore, according to *Cuyler* and *Strickland* supra, the defendant qualifies for relief due to ineffective assistance of counsel and an actual conflict which violated Medina's Sixth Amendment right. In *Kimmelman v. Morrison*, 477 U.S. 365, 91

L. Ed. 2d 305, states that: In order to claim prejudice on the failure to litigate a Fourth Amendment claim, the defendant must show that his Fourth Amendment claim is meritorious, and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. See *Northrop v. Trippett* 265 F. 3d 378, 384 (6th Cir. 2001).

Trial counsel could have easily pursued an alternative strategy or tactic on this claim of ineffectiveness by simply filing a motion to suppress evidence against Medina, as it was requested. Counsel's refusal to suppress evidence adversely effected Medina's criminal proceedings, and the outcome of his trial.

Defense counsel was aware that Medina's girlfriend that allegedly gave consent was more than willing to testify on behalf of Medina, so was the complainant. (A. 9) Trial counsel did nothing to make this alternative strategy come together as it should have.

In *Guzman v. United States*, 2007 U.S. Dist. Lexis 3823 (D.R.I. 2007), after denying the defendant's 2255 motion regarding his attorney's failure to interview two potential witnesses; the judge concluded that interviewing these witnesses would have likely yielded information that confirmed, rather than disputed the defendant's offer to sell a shotgun; and that questioning the monitoring agent or the [confidential informant] would have not been fruitful.

In Medina's case trial counsel was well aware that Ms. Foster, Ms. Washington and Eric Peterson were all witnesses to the incident that occurred on February 7, 2004; and had more than enough opportunities to interview these

witnesses before trial. Trial counsel failed to adequately investigate.

The government will argue that consent was voluntarily given before the drugs and gun were found, and that the search and seizure was thus perfectly legal and involved no Fourth Amendment violation. In addition, they will argue that Ms. Foster signed a consent form at the "police station." Furtado's police report states that Ms. Foster came out of the front door of 114 Waverly St. and stated that Medina was not in the apartment and that Ms. Washington was harassing her when he asked her about Medina. (A. 14) Furtado then asked to search the apartment for a second time to which Ms. Foster replied again that Medina was not up stairs and she did not want her kids traumatized by the police entering her house. Officer Furtado asked yet again if they can check for Medina, with which request she allegedly complied despite her earlier refusal and gave the officers permission to look for Medina. (A. 14) Ms. Foster knocked on the door and Medina opened it. After a brief discussion with the officers, they handcuffed him and placed him in a police cruiser. They then asked Ms. Foster if they can search the apartment for "A WEAPON," to which she allegedly replied in this manner: "Go ahead, search the house, he doesn't live her, there is no Guns in this house." The police claim that this constitutes Ms. Foster giving verbal consent on the scene for them to search the apartment where upon they began their search. (A. 14) This incident occurred at approximately 11:46 A.M. according to officer Decastro's statement. (A. 13) Later on that same day, Det. Patridge obtained a statement from Ms. Foster, which she allegedly gave without threats or promises after being held at the police station. (A. 17)

The probative value of these two Providence police officers' testimony is

limited because it contradicts their police reports. When putting events in chronological sequence it is as follows: Furtado stated in his police report that a short time after knocking on the door, Medina opened it. (A. 14) He then testified that it took Medina 4-5 minutes to open the second floor apartment door. (I. 29) Decastro testified that when he arrived he saw Furtado at the downstairs front door of the apartment with another officer. (I. 72) (Which means the officers had not yet confronted Ms. Foster at the downstairs front door.) Decastro then testified that as he arrived he spoke to Ms. Washington for 10-15 seconds, then ran to the rear of the apartment, which took him 10-15 seconds, and then was banging on the upstairs second floor back door for 10-15 seconds before he was let into the apartment. (I. 73-75)

If Decastro's testimony is in fact true, that would undoubtedly mean that he gained entry first, before Furtado. Anywhere between 3:15-4:15 before Furtado. Furtado testified that he gained entry first, then Decastro came from inside the apartment and arrested Medina. (I. 30) Decastro also testified that he stayed with Medina for the whole entire time in the police cruiser, until their departure to the police station, (I. 69) which is contrary to his police report which reflects a different series of events.

Providence police officer Decastro, stated in his police report that he placed Medina in the cruiser and then went across the street to ask the complainant if he had the right guy. (A. 13) This is the same Providence police officer that testified before this court that Medina was pointing his finger at Ms. Washington with his hands behind his back, (1. 76) the same Providence police officer that testified before this court that Medina was going to tell the judge that the gun and drugs belonged to his

younger brother. (I. 69-70)

When police act without a warrant, the burden of proof is on the government to show the search was legitimate. The Supreme Court has held: "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, Freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1978). In *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981), the Supreme Court held that: in the absence of valid consent or exigent circumstances, warrantless searches are pro se unreasonable and violate the Fourth Amendment. Id. at 211. In this case at hand there was no warrant, nor exigent circumstances. It is alleged that Ms. Foster without threats or promises made a statement and gave consent voluntarily to search the apartment. When this court looks at the critical circumstances it should make its own factual finding of whether or not consent was absolutely voluntarily given.

Whether consent is voluntary it is to be determined by examining the totality of the circumstances, including the interaction between the police and the person allegedly to have given consent; *United States v. Weidul*, 325 F. 3d 50 (1st Cir. 2003); *United States v. Esquilin*, 208 F. 3d 315 (1st Cir. 2000); *United States v. George L. Medina*, 451 supra., *Lynumn v. Illinois*, 372 U.S. 528, 9 L. Ed. 2d 922.

Ms. Foster had never previously had an interaction with the police. Such an initial contact, cannot help but to be intimidating. She works as a clinical caretaker for

the elderly. Ms. Foster is a single mom with two young children and thus particularly sensitive to potential traumatizing events such as high-noon visits by the police. She had and has little knowledge of the law other than observation that any interaction with authority such as police, or child welfare agency agents implied trouble in retaliation for even perceived absence of cooperation. She thus found Furtado's repeated requests for admission into the apartment intimidating. They also carried an implied threat, as if "no" to the search were not the correct answer to a simple question she would be penalized for answering incorrectly.

In *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1518 (2006), held that: a physical present co-occupant who states refusal to permit entry prevails, rendering the search unreasonable and invalid. In this case police allege that Medina came to the front door and stated that Ms. Washington was harassing him. (A. 14) What was not reflected, but rather neglected in the police report was Medina's refusal to allow police entry into his residence. (A. 16) After Medina refused to allow police entry into his residence he was removed from the apartment and placed in a police cruiser, which was a tactic/ruse decision on behalf of the police to gain entry into the apartment. (A. 16)(A. 14) "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-occupant's permission does not suffice for a reasonable search..." Id. at 226.

Due to ineffective assistance of Medina's counsel, Medina was unable to present these arguments before trial was set. It is clear, however, that Medina requested a motion to suppress early in the pre-trial stages. As stated previously, Medina requested this motion on March 29, 2004; trial did not began until August 11, 2004.

The plain language of Fed. R. Crim. P. 12 (b)(3) and (f) establishes that a defendant waives his right to a suppression hearing by failing to move for one before trial. A court may grant relief from this waiver only "for cause shown." *United States v. Mendoza-Acevedo*, 950 F.2d 1, 3 (1st Cir. 1991).

**2. The Defendant Received Ineffective Assistance of Counsel When Trial Counsel Refused to Object to Evidence of Prior Convictions, Prior Bad Acts, and a Pending Case.**

Medina was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution when his trial counsel refused to object to evidence of prior convictions and prior bad acts and then refused a cautionary instruction offered by the judge. (I. 38)

The defendant must overcome the presumption that his counsel's performance could "be considered sound trial strategy." *Strickland V. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052 (1984), quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164 (1955). A defendant must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-90; *Bonneau v. United States*, 961 F.2d 17, 20 (1st Cir. 1992). In evaluating whether counsel was ineffective, the court should evaluate the challenged conduct, not with the benefit of hindsight but from the attorney's perspective at the time of the trial. *Strickland*, 466 U.S. at 689; *Lema v. United States*, 987 F.2d 48, 51(1st Cir. 1995).

A defendant's prior convictions and bad acts can be introduced in evidence in limited circumstancs. F.R.E. 404 states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in comformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, or absence of mistake or accident....

In the present case, the government introduced in evidence court papers of Medina unrelated to the charges being tried. Exhibit 7 was a notice of payment dates for fines. (A. 3) Exhibits 8 and 9 were receipts for payment of fees which included fees for a bench warrant, victim indemnity, and probation and parole. (A. 4-5) Exhibit 21 was a letter indicating that Medina was alleged to be in violation of probation and that he had pled nolo contendere to a charge of "eluding police" and received a one year probationary term with court costs. (A. 6) Exhibit 22 was a notice of court dates and that bail had been set at $500. (A. 7) The papers were found in a bureau drawer and in a Nike shoe box which was found under the bed. Trial counsel did not object to this evidence, nor did he accept a cautionary instruction or redaction of the court papers. (I. 38) The prosecutor reported to the court that he had discussed the court papers with defense counsel and that counsel was not requesting that the documents be redacted. (I. 38)

When asked by the court whether he wanted a cautionary instruction, trial counsel responded, "Judge, it's going to come out. He's going to take the stand." (I. 38) Medina and defense counsel never had occasion to discuss whether or not Medina was going to take the stand; in fact, Medina never took the stand. (A. 16) Often the final

decision about whether a defendant is going to testify is not made until the end of trial, so the needlessly prejudicial evidence should have been excluded at least pending that decision; and since Medina did not testify, the challenged evidence should not have come in at all--and surely not by the defense's hand.

The government will undoubtedly argue that the evidence went to Medina's knowledge of the drugs and gun which were also found in the shoe box and to establish a connection between Medina and the apartment. Medina had a great connection to the apartment: he stayed there regularly and his clothes and very imnportant court documents were found there. To be used at trial to establish such a connection, however, evidence must meet the requirements of both F.R.E. 404 (b) and F.R.E.403, which states:

> Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury....

The evidence in question served the purpose of connecting Medina to the apartment and the box. It was not necessary to admit in evidence the entire contents of the documents to make that connection. The court papers in their entirety were flat-out prejudicial and provided the jury with impermissible, irrelevant, and prejudicial informatrion.

The court in this case recognized that evidence of prior convictions, prior bad acts, and pending cases was prejudicial to the defendant and served no legitimate purpose when it questioned trial counsel about his refusal to object to the introduction of this evidence. (I 38) It is not unreasonable to conclude that in many such cases the jury

can and will follow the trial judge's jury instruction to disregard such evidence. See Bruton .v United States, 391 U.S. 123, 20 L. Ed. 2d 476 (1968). Unfortunately, no such instruction was given.

The primary concern is that prior crimes evidence weighs too much with the jury... and overpersuades them to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. Allowing such highly irrelevant and prejudicial evidence is improper. See *United States v. Cortijo*, 875 F. 2d 13 (1st Cir. 1978); *United States v. Melvin*, 27 F. 3d 703 (1st Cir. 1989); *United States v. Bosch*, 584 F. 2d 1113 (1st Cir. 1978); *United States v. Millard*, 139 F. 3d 1200. 1208 (8th Cir. 1998). There was no permissible basis on which to allow this critical type of evidence in this case. The governments purpose could have easily been served by redaction of the prejudicial information or an appropriate stipulation. This evidence went directly to Medina's propensity to commit crimes.

The charge of "eluding police" went directly to Furtado's suggestion that Medina did not open the door right away. Yet, counsel not only did not pursue but refused a cautionary instruction, and the court did not give one sua sponte. Counsel's refusal to even accept a cautionary instruction from the judge or to request redaction of the documents or a stipulation as to their ownership was unreasonable and most certainly lacking in "sound strategy." See *United States v. Edgar Medina*, 427 F. 3d 88; 2005 U.S. App. Lexis 23009; when reviewing THIS case on appeal for the claim of ineffective assistance of counsel, the court stated that it would not entertain any such claim but until it is brought on appeal from the habeas court; it also stated the following:

"Whether counsel's decision was competent is of course another matter, and Medina's challenge on that claim will be brought before the habeas court if Medina chooses to pursue it." Id. at FN 2

Counsel's deficiency regarding the introduction of the document evidence allowed the jury to consider highly prejudicial information that had absolutely nothing to do with the alleged crimes, but only to do with Medina's propensity to commit crimes. The government proved that their main objective in regards to the court documents was to show Medina's character and made it inevitably obvious when questioning Det. Patridge about certain court documents pertaining to Medina:

> Question: Now, turning your attention to Exhibit 21 what is now being displayed on the monitor, do you recognize that item?
> Answer: Yes, I do.
> Question: And what do you recognize that to be?
> Answer: This is a letter from the Rhode Island Adult Correctional Institution Adult Probation Patrol, to Edgar Antonio, alias Edgar Medina. (I. 100)(A. 6)

> Question: And what do you recognize that to be?
> Answer: It's a Sixth District Division court document notifying of court dates.
> Question: Now, looking again at the monitor where both the signature area but now also the center portion's enlarged, are there any dates that appear in the center portion and, if so, what are they?
> Answer: For determination of attorney, February 2nd, 2004; for pre-arraignment conference, 3/29/04; and arraignment of April 5th, 2004. (I. 101-102) (A. 7)

The prosecutor did it yet again, for a third time during closing arguments. (III. 7-11)

Throughout this whole entire trial, irrelevant and prejudicial information was brought out by the government and defense counsel; even when the judge provided trial counsel with an option to request a cautionary instruction he refused. Stating that the defendant was going to take the stand was absolutely erroneous. Trial counsel's performance was deficient. See *United States v. Bosch*, 584 supra. Such performance was detrimental to not just Medina's defense, but would be to any defense. *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 1156-57, recognizing that the period from arraignment all the way to trial is perhaps the most critical period of the proceedings. Medina was without a doubt, forbidden the right to effective assistance of counsel, which the Constitution of the United States guarantees.

**Medina Was Denied Effective Assistance During Sentencing By Trial Counsel's Refusal To Adequately Prepare For The Sentencing Hearing And Failed To Review The P.S.R. With Medina Prior To The Hearing Date.**

On August 13, 2004, the jury returned verdicts of guilty against Medina. Sentencing was scheduled for November 5, 2004, at 10:00 A.M. (III. 68) On September 30, 2004 trial counsel received a draft of the pre-sentencing report which included Medina's juvenile record. (A. 8) Trial counsel reported that the November 5th date was fine with him. (III. 68) On November 5, 2004, 10:00 A.M., trial counsel reported to the court that he was unaware the sentencing was scheduled for that day. (Sent. 2) He further reported that up until that day he had not reviewed the P.S.R. with his client. (Sent. 2) He did not request that sentencing be continued until he had time to prepare.

He stated to the court that he had explained (that day) to his client that no objections to the P.S.R. had been filed because the calculations were correct and that he had gone over the P.S.R. with his client that morning. (Sent. 2-3) The judge inquired of trial counsel as to whether he had any objections to the P.S.R. to which he replied that he had a general objection to the guidelines in "hopes" that they are declared unconstitutional. (Sent. 3) Trial counsel did not state that he had tried to identify any possible downward departure.

It is clear from the record that trial counsel did not prepare for sentencing, that he had not spoken to his client, and that he only reviewed the P.S.R. with him that morning before the 10:00 A.M. sentencing.

Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, 466 U.S. 687, with performance being measured against an objective standard of reasonableness, id. at 688, "under prevailing professional norms," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In *Rompilla v. Beard*, 125 S. Ct. 2456 (2005), the court looked to the "norms of adequate investigation" in preparing for the sentencing phase of a capital trial. In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to "counsel's perspective at the time" investigative decisions are made and by giving a heavy measure of deference to counsel's judgements. Rompilla at 2464 quoting Strickland, 466 U.S. at 689, 691. In Rompilla trial counsel conducted numerous interviews with the defendant and members of his family, and submitted examinations of reports by three mental health experts who gave opinions at the guilt phase. The court found that this

was not sufficient. Post conviction counsel was able to identify a number of other avenues, such as school records, that trial counsel could have followed. The court specifically pointed to trial counsel's knowledge that defendant had left school after the ninth grade. Rompilla at 2462, 2463. The court further pointed out that trial counsel knew that the government was seeking a harsh penalty and that it had intended to point to the defendant's prior record and history of violence. Id. at 2463. The court found inexcusable trial counsel's failure to timely review a transcript which was to be used at the sentencing hearing. Id. at 2464. This was analogous to trial counsel's failure to prepare for sentencing in Medina's case.

Unlike trial counsel in Rompilla, it appears as though Medina's counsel did nothing to prepare for sentencing, and ignored his obligation to find mitigating evidence. Rompilla at 2462. Medina was 19 years old at the time of sentencing. He was facing more than twenty years in prison. He reported that he hardly knew his father, and that he was exposed to drugs at a very young age. (P.S.R. 10) His mother was addicted to drugs, and at times he had to obtain them for her. (P.S.R. 10) He further reported that he was mentally disturbed, and feeling suicidal the day before his arrest. (P.S.R. 11) He reported that he had been seen at Butler Hospital when he was 10 years old[6]. Although probation was unable to verify this claim, they did verify that Medina was prescribed Ritalin at a young age; also that Medina had a troubled school history and ended up in the Rhode Island Training School by age 15.

---

6 Note: Medina mistook Butler Hospital for Bradley Hospital, which is accurate. (A. 12)

It is clear from the record that counsel did not investigate his client's background, nor did he hire a mental health professional to conduct an examination of his client. His sentencing argument was gleaned from the P.S.R.:

> "The defendant speaks to probation and says that he is a product of his environment. We're talking about a 19 year old kid who's had a difficult life, I mean, obviously, getting in trouble at age 11, ultimately ending up in the training school by age 15... he was, unfortunately, not in a family situation that was conducive to producing productive members of society, and he sort of got caught up. And then you look at maybe there are some psychological issues, whether or not--at one point he was
> taking Ritalin, whether or not those psychological issues didn't some how come together with the way things were going in his life to some how hold him down." (Sent. 9)

It is clear from this argument that trial counsel just read the P.S.R. and argued from it without investigating any possible reasons for a departure such as diminished capacity (Medina suicidal at the time of the arrest and a history of mental health issues) and extraordinary circumstances. Medina suffered from prejudice because his trial counsel's deficiency in preparing for the sentencing did not put all the relevant facts before the court.

**4. Medina Received Ineffective Assistance of Counsel When Trial Counsel Failed To Object To Jury Instruction Regarding 924 (c)(1)(A) Charge.**

Before opening statements, the judge explained to the jury the requirements to convict Medina under 924 (c)(1)(A) as follows: "The Government must prove two essential elements beyond a reasonable doubt in order to sustain its burden

of proof on Count IV. First, that the Defendant committed the crime of possession with intent to distribute a controlled substance as charged in Count I, II, and/or III; second, that during and in relation to the commission of that crime, the Defendant knowingly used or carried a firearm." (I. 10) After closing arguments, the court gave the jury insruction as to count IV as follows: "There are two essential elements which the Government must prove beyond a reasonable doubt to sustain its burden of proof on Count IV. One, that the Defendant committed the crime of possession with intent to distribute a controlled substance as charged in Count I, II, and/or III of the Indictment; two, that the Defendant 'POSSESSED' a firearm in furtherence of the commission of the crime or crimes described in the counts on which you find the Defendant guilty..." (III. 52) The jury was further instructed: "Whenever I use the term POSSESSION in these instructions, I mean actual as well as constructive POSSESSION, sole as well as joint possession." (III. 52)

These two descriptions of the government's and jury's tasks in proving and deciding the case diverge from and are at odds with each other and the applicable law. The confusion arises over what constitutes "used or carried in relation to" within the meaning of the statue, 924 (c)(1)(A). In the instruction it gave the jury, the court misconstrues mere constructive possession as the requisite use or carrying necessary to invoke 924 (c)(1)(A). This, as discussed below, is plain error.

In this case at hand, police found narcotics and a firearm inside a Nike shoe box under a bed. At trial their was never any evidence to establish that Medina "used" or "actively employed" the firearm, or facilitated a drug trafficking offense with it in

any way. Instead, drugs were merely found stored with a firearm in a room in a house with no connection to any sort of drug dealings. Indeed, when the government sought to introduce evidence of the "used in relation to" prong, trial counsel objected, which objection was sustained. (I. 83) Therefore, there is no evidence in the record that the firearm was "used in relation to" a drug trafficking crime.

This type jury instruction permitted the jury to convict on the basis that Medina merely had knowledge of the firearm stored with the drugs, which is contrary to Bailey v. United States, 516 U.S. 137, 133 L. Ed. 2d 472 (1995). "A defendant cannot be charged under 924 (c)(1)(A) merely for storing a weapon near drugs or drug proceeds." Id. "Storage of a firearm, without its more active employment, is not reasonable distinguishable from possession." Id.

The judge in this case cited only "POSSESSION or POSSESSED," be it actual, constructive, sole, or joint, as sufficient for a conviction under 924 (c)(1)(A). The government MUST show active employment of the firearm by the defendant or a conspirator; use does not include the mere placing of a firearm at or near the site of a drug crime. Id at 508. See also Oblijo v. United States, 931 F. Supp. 111 (1st D.P.R. 1996); Rivera v. United States, 933 F. Supp. 138 (1st D.P.R. 1996). In United States v. Eastering, 157 F. 3d 1220 (10th Cir. 1998), the court concluded that an enhancement under 924 (c) was fundamentally inappropriate and remanded the case back to the district court for an enhancement under 2 D 1. 1 (b)(1).

Ineffective assistance of counsel under Strickland, supra. is a showing of deficient performance that falls below an objective standard of reasonableness plus a

showing of prejudice adversely effecting the defense. In this case, trial counsel was well aware of a five year consecutive term of imprisonment if defendant was convicted under 924 (c)(1)(A), and the transcript reflects that knowledge. (I. 83) However, trial counsel fell below in "professional norms" when he did not object to the erroneous jury instruction and failed to even mention the insufficiency of the evidence regarding 924 (c)(1)(A) in Medina motion for an aquital as to Count IV. (A. 19)

In *United States v. Torres-Malonado*, 14 F. 3d 95 (1st Cir. 1994) the court was confronted with virtually the same circumstances as in this case. It concluded that there was insufficient evidence to allow a jury to conclude beyond a reasonable doubt that the defendant actually possessed a firearm for purposes of section 924 (c)(1). See also *United States v. Ramirez-Ferrer*, 82 F. 3d 1149, 1152 (1st Cir. 1996), (similar erroneous jury instruction).

The situation here is thus closely analogous to the situation in Bailey, supra. There the court held that mere storage of a firearm with drugs was insufficient to bring 924 (c)(1) into play. Further, in light of Bailey, the court's jury instruction on the subject was erroneous. Bailey would preclude constructive possession such as that in Medina's case from triggering 924 (c)(1)(A), yet the court instructed the jury that they could. This is plain error. Had trial counsel objected to this instruction the court's attention would have been drawn to the error and it would have been rectified. Moreover, had it been rectified Medina would have just been subject to a two point enhancement under (U.S.S.G) 2D1. 1 (b)(1), or perhaps no enhancement. These jury instructions and trial counsel's failure to object thus prejudiced Medina's outcome of trial.

The government never proved that Medina "actively employed" or "used" the firearm as required by Bailey.

In light of that prejudice, counsel's failure to adequately address the jury instruction or the 924 (c)(1) issue underlying it fell below any reasonable standard of professional performance. Both tines of Strickland's ineffectiveness test are met regarding this issue.

**5. Trial Counsel Had a Conflict of Interest That Deprived Medina of Effective Assistance of Counsel.**

Medina was indicted on April 7, 2004, on or about March 2004, John M. Cicilline became legal counsel for Medina. During pre-trial proceedings, Medina requested that a number of motions be submitted to the court by this attorney, one being a motion to suppress evidence against Medina. Unfortunately, these requests were neglected and not taking into consideration by counsel due to divided loyalties that underlay the conflict of interest.

Trial counsel (JOHN M. CICILLINE) was indicted on or about January 4, 2007, for the following: Count (1) CONSPIRACY in violation of 18 U.S.C. § 371; (2) OBSTRUCTION of JUSTICE in violation of 18 U.S.C. § 1503 (a), and two Counts of FALSE STATEMENTS in violation of 18 U.S.C. § 1001. See (A. 18)

Under *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), a defendant has the burden of showing an adverse effect on his lawyer's performance when a conflict of interest surfaces for the first time after trial.

*Well, what could be more of a conflict than a concern over getting oneself into trouble with CRIMINAL LAW ENFORCEMENT Authorities?* Cuyler made clear that once a defendant "shows that a conflict of interest actually affected the adequacy of his representation [he] need not show prejudice in order to obtain relief." Although, prejudice was clearly proven in the above arguments.

Essentially, the allegations against Cicilline are that for substantial payments he colluded with upper echelon drug dealers to manufacture drug crimes his clients could then barter for leniency in charges pending against them. Medina under any circumstances could not either pay for such a service or participate in such a false witness scheme (regardless the condition). Cicilline thus had in an interest in not providing the zealous defense to which Medina was entitled to, to demonstrate to Medina and observers of the criminal defense scene, including prospective clients, that the payments were necessary to secure his good offices. He had a further interest in making his win-loss statistics appear more within the pale. Evidence that he acted on these interests in Medina's case included the suppression motion and objections not made during trial and complained of herein.

This kind of conduct from an officer of the court is very unusual. Despite a two year investigation, there has not been any adjudication as of yet. However, this is a meritorious issue and has to be looked at in the light most favorable to the defendant. See *United States v. Cancilla*, 725 F. 2d 867 (2nd Cir. 1993); *Garfias v. United States*, 894 F. Supp. 37 (1st D.M. 1995). "... [A] actual conflict exists because the potential for diminished effectiveness in representation is so great." See *United States v. Fulton*, 5 F.

3d 605, 610 (2nd Cir. 1993).

According to Cicilline's indictment, criminal activity was taking place during the time in which Medina was going through criminal proceedings. Including on the day before Medina's trial, August 10, 2004. *It is inconceivable to put oneself in trial counsel's position and to expect a competent performance within professional norms under such circumstances.*

**6. Whether Medina Is Entitled To a Two Point Base Offense Level Reduction Due TO The Change In The United States Sentencing Guideline.**

The United States Sentencing Guideline Commission made retroactive the recent change in cases involving crack cocaine offenses. The amendment went into effect on November 1, 2007, and retroactive thereafter. The effective date of the retroactivity decision will be March 8, 2008. *United States v. Kimbrough*, 82 CrL 275 (U.S. 2007) *Gall v. United States*, U.S., No. 06-7949, (12/10/07). Medina is currently at the mandatory minimum as to Count I, trial judges are not yet able to go below the mandatory minimum. However, the defendant will like to reap the benifet if congress decides to lower the mandatory minimum and deems it retroactive.

The defendant respectfully petitions this court to consider *all* the above arguments with a keen eyesight.

I, Edgar A. Medina, swear under penalty of perjury pursuant to 28 U.S.C § 1746 that the information set forth in the above motion: Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct sentence is true and correct.

January 10, 2008.

Edgar Medina

D. Ashanty, CSW, 01/10/08

AUTHORIZED BY THE ACT OF JULY 7, 1955, AS AMENDED, TO ADMINISTER OATHS 18 U.S.C. 4004