**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EDGAR MEDINA** | ) | |
| | ) | |
| **vs.** | ) | **C.R. No. 04-043ML** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE HIS CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. §2255**

## I. INTRODUCTION

The Petitioner, Edgar Medina (Medina), files this motion pursuant to 28 U.S.C. § 2255. In his motion, Medina claims his attorney failed to effectively represent him at both his trial and sentencing. Medina specifically complains that defense counsel failed to file a pretrial suppression motion, decided not to object to the introduction of certain prejudicial evidence, and failed to object to a portion of the Court’s jury instructions. He further alleges that his attorney had a conflict of interest at the time he represented defendant. Lastly, the defendant also raises the issue of potential relief under 18 U.S.C. § 3582, referencing the adoption and retroactive impact of the new crack sentencing guidelines.

The government contends that Medina’s claims are without merit. Therefore, the government requests that the motion be denied and dismissed.

## II. TRAVEL AND FACTS

On April 7, 2004, a federal grand jury in the District of Rhode Island returned a four count indictment charging the defendant with one count of possessing with intent to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii); one count of possessing heroin with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of possessing marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and, one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Following jury selection on August 10, 2004, the case proceeded to trial. On August 13, 2004, that trial came to an end with the jury's return of guilty verdicts on all four counts of the indictment. The Court then sentenced the defendant on November 5, 2004 to a total term of 308 months incarceration, a five year term of supervised release and a $400 special assessment. The Court subsequently imposed a lesser sentence of 180 months incarceration after the Circuit Court remanded the case for resenting pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005).

## III. ARGUMENT

### A. THE LAW OF SECTION 2255 MOTIONS

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 442 U.S. 178, 184-85 (1979), the Supreme Court stated:

> It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment . . . [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited . . . The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'. . . Similar limitations apply with respect to claimed errors of fact.

See also, Davis v. United States, 417 U.S. 333, 346 (1974).

A collateral attack may not do service for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). To obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on a direct appeal.

The standard of review of a § 2255 motion for alleged trial errors to which no contemporaneous objection was made is not the plain error standard, but the cause and actual prejudice standard. Frady, 456 U.S. at 166-67. A defendant cannot raise in a federal habeas proceeding issues which he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999); Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

Section 2255 provides that the Court, after receiving said motion, should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 of the Rules Governing Proceedings in the United States District Courts Under § 2255 provides in pertinent part that "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the District Court, the judge shall make an order for its

summary dismissal and cause the movant to be notified." The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989).

The First Circuit has stated that no hearing is required where the § 2255 motion: "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989). A District Judge's personal observation and recollection of the events may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.l (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-55 (1st Cir. 1978). In considering a motion under § 2255, the District Court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

B. INEFFECTIVE ASSISTANCE OF COUNSEL

The two-part test for evaluating ineffective assistance of counsel claims was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-688 (1984). A defendant must show both: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; Mathews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995); Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994); United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). The defendant's burden is by the preponderance of the evidence.

With regard to the first element, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999) and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). The Court should indulge a "'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" Singleton, 26 F.3d at 238 (quoting Strickland, 466 U.S. at 689); See also Scarpa, 38 F.3d at 8.

Prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001).

C. ISSUES

1. Failure to File a Suppression Motion

Medina complains that his attorney failed to file a pretrial suppression motion challenging the legality of the search of his girlfriend's apartment. When determining whether or not such tactical decisions fall within wide range of reasonable professional assistance, the court should examine what defense counsel knew or should have known at time he made and implemented those choices. United States v. Ortiz, 146 U.S. 25, 27 (1st Cir. 1998). Following that review, the Court must then analyze whether the tactical decision in question was so erroneous as to constitute deficient performance. Id. Of course, any such judicial scrutiny of defense counsel's performance must be highly deferential, requiring the Court to avoid the distorting effects of hindsight and giving rise to the strong presumption that counsel's conduct does, in fact, fall within that wide range of reasonable professional assistance. Strickland v. Washington, 466 U.S. 668, 689 (1984).

In the instant case, members of the Providence Police Department responded to 911 call at 114 Waverly Street, Providence, Rhode Island. Upon arrival at that location, the female caller informed Officer Francisco Furtado that the defendant smashed the windshield of her vehicle with a handgun, a claim supported by the officer’s observation of the damage to the windshield. The complainant further informed responding officers that the defendant then fled with the handgun to an apartment located on the second floor of 114 Waverly Street.

Officer Furtado met with Tammy Foster, the second floor tenant, who initially denied that the defendant was inside of her apartment. She did, however, walk up to the second floor with Officer Furtado, attempt to open the door to the apartment, and discover that it was locked. Officer Furtado then knocked on the door, which was eventually opened by the defendant. The defendant, who was no longer in possession of the handgun, stepped out of the apartment at the request of the police and was taken into police custody.

In response to a request from Officer Furtado, Ms. Foster consented to the search of her apartment. Officer Furtado then entered the apartment and conducted a search of the premises. During that search, Officer Furtado discovered, among other things, a box containing crack cocaine, heroin, marijuana, and a

loaded firearm. That box, which had been secreted under a bed, and its contents were subsequently seized by the police.

A valid search of a dwelling may be made by law enforcement officers without a warrant or probable cause if the resident has given his voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). This same principle applies even if the person giving that voluntary consent is a co-occupant who possesses common authority over the premises in question. United States v. Meada, 408 F.3d 14, 21 (1st Cir. 2005). The determination of whether the consent was valid is a fact-specific inquiry that requires an examination of the totality of the circumstances. United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000). In conducting such an inquiry, the Court must consider a number of factors, including the defendant's age, education, experience, intelligence, and knowledge of the right to withhold consent. United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993). Here, a review of the totality of the circumstances establishes that the defendant's twenty-nine year old girlfriend, Tammy Foster, voluntarily gave her consent to a police search of her apartment located on the second floor of 114 Waverly Street, thereby resulting in the lawful seizure of the heroin, crack cocaine, marijuana, firearm, and other related evidence. In fact, based upon the testimony presented at trial, there is no

evidence to refute or even cast doubt upon the fact that Ms. Foster voluntarily consented to the search in question.

Even if Ms. Foster had not consented to the search, the police were also justified in entering and searching her apartment without a warrant based upon the exigent circumstances that existed at that point in time. United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005). Officer Furtado reasonably believed that there was a compelling need for immediate action, that is, both to recover evidence of the crime before it could be removed and to protect the safety of the children occupying the apartment. Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st cir. 1991).

Based upon the information available to him at the time, Officer Furtado had a reasonable basis to believe that the defendant had discarded a dangerous instrumentality, that is, the firearm, in a location where it would be easily accessible to the children occupying the residence, which was precisely the location that he searched. Under those circumstances, Officer Furtado was justified in entering the premises without a warrant and conducting a search for that firearm. United States v. Martins, 413 F.3d 139, 147 (1st Cir. 2005).

2. Failure to Object to the Admission of or Request a Cautionary Instruction Regarding Certain Evidence

Medina also complains that his attorney neither objected to the admissibility of nor accepted the Court's offer of a

cautionary instruction regarding state court notices bearing the defendant's name. Those notices, which the police recovered from the same bedroom where they discovered the drugs and the firearm, were highly relevant and material to the issue of defendant's possession of the contraband, thereby making them admissible in some form as evidence at his trial. Rule 402 of the Federal Rules of Evidence.

With regard to defense counsel's decision not to seek redaction and/or accept the Court's offer of a cautionary instruction, the record reflects that defense counsel believed at that point in time that the defendant would in fact testify in his own defense. Therefore, that tactical decision was not unreasonable under those circumstances and should not now be second guessed in light of the fact that the defendant ultimately decided not to testify.

3. <u>Defense Counsel was Unprepared for Defendant's Sentencing Hearing</u>

Medina contends that his attorney did not properly prepare for defendant's first sentencing hearing, held on November 5, 2004. Although the government does not necessarily agree with that assertion, any prejudice allegedly suffered by the defendant as a result of this perceived inadequacy was cured when the

defendant was afforded the opportunity for a second sentencing hearing on July 25, 2006.[1]

4. Defense Counsel's Failure to Challenge the Court's Jury Instructions on Count IV of the Indictment

Defense counsel did not object to the Court's instructions relating to the charge set forth in count IV of the indictment because those instructions were correct and, therefore, could not be successfully challenged. The instructions given by the Court properly set forth the law applicable to the crime as charged in the indictment, that being possession of a firearm in furtherance of drug trafficking crime. Defendant, in making his argument in support of his § 2255 petition, is operating under the mistaken assumption that he was charged with using or carrying the firearm during the commission of a drug trafficking offense, which is simply not the case.

5. The Defense Attorney's Alleged Conflict of Interest

Defendant alleges that the fact that defense counsel was indicted in the District of Massachusetts more than two years after the conclusion of his case establishes the existence of a conflict of interest that adversely impacted defense counsel's performance at trial. The defendant fails, however, to point to any evidence suggesting that defense counsel, at the time of the

[1] But for trial counsel's preservation of the *Blakely/Booker* issue at the original sentencing, defendant may not have received the benefit of the lesser sentence imposed at his re-sentencing.

trial, was even aware of the existence of the investigation leading to that indictment and/or that this so called conflict had any adverse impact upon defense counsel's performance of his duties.

Even assuming that defense counsel had been aware of the existence of the investigation, the defendant would not necessarily be entitled to any relief. In Reyes-Vejerano, the First Circuit held that there was no "fatal conflict" where a defense attorney was aware of a possible drug investigation of him by the same United States Attorney's office[2] that was then prosecuting his client in a major drug trial, and where there was no conflict waiver. Reyes-Vejerano, 276 F.3d at 98-100. Moreover, the First Circuit was careful to distinguish two extra-circuit cases, in which (1) a federal prosecutor made a mid-trial statement "accusing defense counsel of involvement in drug trafficking," and (2) a defense attorney was "indicted during his representation of a client by the same office prosecuting his client, and then enter[ed] a plea of guilty after negotiations with that office." Id. at 99-100.

6. The Impact of the New Crack Cocaine Guidelines

[2] Of course, in the instant case, defense counsel is being prosecuted by a different United States Attorney's office than the one that prosecuted his client.

By his own admission, the defendant is not entitled to any relief as a result of the retroactive application of the newly adopted crack cocaine guidelines.

## VI. CONCLUSION

The United States therefore requests that the petitioner's motion be denied and dismissed.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Stephen G. Dambruch

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
RI Bar No. 3309
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
Fax: (401) 709-5001
stephen.dambruch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March 2008, I caused to be served a copy of the within Government's Response by postage prepaid mail to:

Edgar Medina
Prisoner No. 05442-070
USP Big Sandy
P.O. Box 2067
Inez, Kentucky 41224

/s/ Stephen G. Dambruch

Stephen G. Dambruch
Assistant U.S. Attorney
RI Bar No. 3309
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
Fax: (401) 709-5001
stephen.dambruch@usdoj.gov