# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

Edgar Medina,
Movant,
vs.
United States of America,
Respondent.

Case No: 04-043 ML

## Petitioner's Reply to Government's Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC §2255

Now comes the petitioner, pro se, in the above-entitled action and addresses all claims set forth in government's response to petitioner's Motion to Vacate, Set Aside, or Correct Sentence. The Supreme Court set forth the requirements to sustain a claim of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 600 (1984). Under *Strickland*, a defendant must satisfy two requirements to prevail on an ineffective assistance claim: "prejudice" and "performance". Id. at 694. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, the petitioner must show that the result of the proceeding was prejudiced by counsel's deficient performance. Satisfaction of this burden requires specific examples of deficient performance and showing that those deficiencies prejudiced the outcome of the proceedings. Petitioner fulfills every element.

## Issues and Objections

1) Page 7, paragraph 1(of the government's response): Petitioner objects to government's implication that counsel's refusal to file for a suppression hearing was a legitimate tactical decision based on counsel having no knowledge of any basis for such a hearing. On the contrary, there is no basis for any such implication. Moreover, if counsel were so ignorant that that would be true, that, in itself, would be a sufficiently

egregious fall below any professional standard of competence as to constitute ineffective assistance. Clearly, suppression of the gun and drugs, the whole of the evidence against petitioner, was so important to the case as to be worth pursuing against even a slim possibility of prevailing. This is especially true given that there was a much fatter than slim chance of success: the apartment being searched without a warrant nor Medina's consent (See *Georgia v. Randolf,* 547 U.S. 103 (2005).); Medina's girlfriend pressured into giving her consent by the officers (See *United States v. Tibbs*, 49 F.Supp.2d 50 (D.Mass 1999) and *Lynumn v. Illinois,* 372 U.S. 528 (1963).); the inadequacy of her consent alone (See *United States v. George L. Medina*, 451 F.Supp.2d 262 (D.Mass. 2006).); and the absence of exigent circumstances (See *United States v. Matthews,* 2006 U.S. Dist. Lexis 7701 (1st Cir. 2006) and United States v. Torres, 247 F.Supp.2d 146 (D.R.I. 2003).); among other things.

2) Pages 8 - 10: The government goes on to assert that no evidence at trial even cast doubt on the voluntariness of the consent. And that, with respect to ineffectiveness of counsel, is precisely the issue: evidence that the search was involuntary existed at the time, was reasonably available through the exercise of due diligence, yet was not brought forth in a timely manner--or at all--by petitioner's counsel. The government thus makes petitioner's point.

Ms. Foster repeatedly refused Officer Furtado admission into the residence while at the immediate front door of the apartment. Furtado's police report reflects those refusals. Ms. Foster stated that she did not want her children traumatized by police entering the home. Under the circumstances of this case, there is no reason to believe that Ms. Foster's alleged consent, during or after the search, was anything other

than a submission to a claim of authority. Such a submission is insufficient to establish voluntary consent. Coercion was applied and played a vital role in the discovery of the drugs and gun. Where there is coercion, there cannot be consent. *Bumper v. North Carolina*, 391 U.S. 543 (1968); *United States v. Matthews,* supra.

Indeed, age, experience, education, intelligence, and knowledge of the right to withhold consent is to be considered while deciding if consent was truly genuine. However, what the government failed to point to is that the interaction between the police and the person who has allegedly consented must also be considered while rendering a decision on whether or not consent was voluntary *United States v. Weidul,* 325 F.3d 50, 53-54 (1st Cir. 2003). One can only imagine the impact of the authoritarian demeanor demonstrated by the police with their persistence in trying to gain entry into the apartment after being repeatedly denied entry by Ms. Foster. Moreover, Ms. Foster's alleged cooperation was indeed the product of desperation and, therefore, is subject to be contested.

In addition, it is clear that petitioner himself had standing to invoke his fourth amendment right to be free of a warrantless, nonconsensual search of his apartment, the one he shared with his girlfriend and to which the government insists on tying him with evidence such as the court documents, to whose introduction and admission petitioner also objects, infra. See *Minnesota v. Carter*, 525 U.S. 83 (1998); *Minnesota v. Olson*, infra.

The government also asserts that even if consent was not given, the search was justified by exigent circumstances. Petitioner objects to the notion that the search was necessary to protect the children from a supposed "dangerous

instrumentality," as the notion is without merit. There were two children present at the time of the arrest who were under the supervision of their mother, Ms. Foster, to insure their safety, as evidenced by her refusal to admit the officers for fear her children might be traumatized. The officers also could have secured the children outside the residence pending acquisition of a warrant. The First Circuit has pointed to four situations that qualify as exigent, not one of which is applicable here: (1) hot pursuit of a fleeing suspect; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) risk that the suspect may escape from the residence undetected; (4) a threat, posed by the suspect, to the lives or safety of the public, the police officers, or to himself. *United States v. Torres*, supra; *Minnesota v. Olson*, 595 U.S. 91 (1990); *Payton v. New York*, 445, U.S. 573 (1980). Thus, it is apparent that neither the warrantless search nor the involuntary consent can be overcome by means of exigent circumstances. Therefore, the government's argument in this regard fails.

It should be noted that trial counsel failed to pursue petitioner's suppression motion only when trial counsel became aware of petitioner's inability to secure a second payment for counsel's services. Counsel Cicilline's performance in failing to pursue the plausible strategy of filing the motion to suppress fell below an objective standard of reasonableness. Petitioner thus meets both requirements set forth not only in *Strickland*, supra, but also in *Kimmelman v. Morrison*, 477 U.S. 365 (1985).

In light of the foregoing, petitioner's counsel was ineffective for refusing to continue what was requested of him, what he promised, what he filed for a time extension to do, and what was clearly necessary: pursue a motion to suppress. See *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001). See also regarding this issue, *United*

*States v. Antone*, 479 F.Supp.2d 55 (D. R.I. 2007).

3. Pages 10 - 11: Petitioner objects to government's assertion that relevant documentary evidence was admissible under Rule 402 F.R.E. as if that were the end of the issue while neglecting to mention Rules 403 and 404 (b). Trial counsel did not just refuse to object to highly prejudicial evidence, but also refused to even accept a cautionary instruction, saying the defendant was to testify. Counsel had no basis for this claim or action based on it. Counsel never made occasion to discuss with petitioner whether or not he was going to testify.

Petitioner had no intention of taking the stand. For the opportunity to say nothing more probative than, "No, the contraband is not mine." petitioner would have exposed himself to the vagaries of the witness stand--such as the introduction of prejudicial material to impeach him. If counsel could/did not perceive this, he was de facto ineffective. And petitioner did not, in fact, take the stand. That suggests counsel did not have a coherent, sound trial strategy and was making his objections or lack thereof (as with the prejudicial documents) up as he went along.

Every single court document that was admitted and shown on the screen for the jury's view was prejudicial and not probative. The government exaggerated and capitalized on these documents, and made its main objective to do so very explicit: to calumniate petitioner's character and suggest a propensity to commit crimes. Yet counsel did nothing to protect his client from this miscarriage of justice. When this court makes an analysis of these documents, it will readily identify their critical contents. (See exhibits: 7, Notice of Court Dates; 8-9, Record of Rhode Island Justice System, displaying that petitioner has had not one but two bench warrants and that he had used

an alias, Edgar Antonio; 21, Notice of Court Dates and bail setting at $500; 22, explaining that petitioner was in violation of his probation and "eluded police," not just once, but twice.)

How could any jury not pre-judge not only a defendant who is being accused of narcotics trafficking and firearm violations, but any regular citizen with these kinds of encounters with agencies of law? It was and is not only illogical, but highly irrational not just for Mr. Cicilline, but for any legal advisor to think such prejudice would not occur. For this reason, needless introduction of prejudicial evidence such as was introduced at petitioner's trial is improper. See *United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2003); *United States v. Aguilar*, 58 F.3d 796 (1st Cir. 1995); *United States v. Melvin*, 27 F.3d 703 (1st Cir. 1994). The government's claim that Rule 402 F.R.E. supports and protects the admission and its use of these documents also fails in light of Rules 403 and 404 (b).

Accordingly, petitioner meets the requirements set forth in *Strickland*, supra: Trial counsel's performance was deficient and prejudiced petitioner. Counsel did not pursue a plausible alternative strategy, which was to object to the prejudicial evidence.

4. Pages 11 -12: The government claims that any inadequacy at sentencing on November 5, 2004, was cured when petitioner got the opportunity to be resentenced on July 25, 2006. That assertion cannot, by itself, circumvent the facts. And those are that counsel was not prepared for sentencing; did not know that it was scheduled for that day; did not investigate to find mitigating evidence as he is obligated to do; and did not review the P.S.R. with petitioner until the day of sentencing. Fed. R.

Crim. P. 32 (e)(2) explains that copies of a pre-sentencing report are to be sent to both parties, including the defendant, 35 days before sentencing. Petitioner never received a copy from anybody. The revised sentencing report was sent to Mr. Cicilline on October 27, 2004; counsel did not ask for a continuance.

In addition, counsel did not prepare a sentencing strategy. Nor did he investigate his client's psychological evaluation, which could have potentially been grounds for a downward departure. Trial counsel's indifference in this matter thus fell below a reasonableness standard and prejudiced petitioner. See *Rompilla v. Beard*, 125 S.Ct. 2456 (2005).

5. Page 12, paragraph 1: Petitioner objects to the government's claim the jury instruction regarding use versus possession of a firearm in furtherance of a drug crime was accurate. Petitioner also objects to the claim that he is operating under a mistaken assumption. Petitioner is aware that he is charged with "in furtherance of a drug trafficking crime." The Supreme Court, however, in *Bailey v. United States*, 516 U.S. 537 (1995), specifically stated that the mere storage of a firearm and drugs together did not constitute possession "in furtherance of" or "in relation to" a drug crime. The subsequent change in the language of the statute did not change that fact. The government cites zero authority for the proposition that it did or that storage does otherwise constitute the charge .

6. Page 12, paragraph (2): Petitioner objects to the government's claim there is no evidence of a conflict of interest that adversely affected defense counsel's performance at trial. As the foregoing resoundingly demonstrates, something clearly adversely affected counsel's performance, laying it lower than the floor of effective

assistance. The many deficiencies in performance themselves are evidence. Counsel was not confronted at the time with other crises such as death in the family, serious illness, financial embarrassment, unusual professional challenges, et cetera, that would account for his impaired performance in petitioner's case.

If Counsel Cicilline were engaged in felonious activities, however, that would have led to preoccupation, distraction, and demands on his attention, potentially accounting for his deficient performance in petitioner's case. Further, the hundreds of thousands of dollars suggested by counsel's indictment would have commanded much more attention than the paltry $3000 petitioner was able to scrape together for his services. If Counsel Cicilline were not engaged in felonious activities, his professional expertise would nevertheless have told him that the activities that attracted investigative attention and ultimately indictment could be viewed as suspicious. For an honest person, that potential for reputation damage even in the absence of investigation and prosecution would induce the same type of preoccupation and distraction as actual criminal activity. And even from an honest person, the large sums of money would have attracted attention away from the small change of small fry like petitioner.

7. Page 14: Petitioner objects to the government's claim that he is not entitled to any benefit from the Sentencing Commission's recent reduction of the "crack" cocaine penalties. If the constitutional principle of equal protection under the laws mandated the reduction, it must be applied to everyone sentenced for "crack" offenses (i.e., similarly situated) regardless of whether the government may feel district court judges may not go below mandatory minimums. In petitioner's case, that means that because the United States Sentencing Guidelines penalty disparity between powder

cocaine and "crack" cocaine was essentially reduced from 100 to 1 to 33 1/3 to 1, the eligibility requirement for the mandatory minimums under 21 USC §841 should also be similarly reduced. Hence, the 102 grams alleged against petitioner should be reduced to an effective 34 grams, requiring his sentencing under 21 USC §841 (b)(1)(B)(iii) with its 5 year mandatory minimum rather than §841(b)(1)(A)(iii) with a 10 year mandatory minimum.

## CONCLUSION

In light of the foregoing, it is apparent that the government's response claiming that petitioner's counsel was effective so petitioner is entitled to no relief in this action is without merit. The firearm and drug evidence should have been excluded as the product of a warrantless, nonconsensual search. The government made a halfhearted attempt argue that petitioner's counsel was effective in failing to suppress this evidence because the search was consensual and, even if it were not, exigent circumstances allowed it. But the government was arguing circumstances that do not obtain in this case. The government argues that the needless admission of the prejudicial documents whose probative value was exceedingly small was legitimate, and that petitioner's counsel was thus effective in failing to exclude the documents by ignoring the controlling authority on the subject, Rule 403 F.R.E. The government claims petitioner is mistaken in contending his "possession" of the firearm was not "in furtherance of a drug crime" and that his counsel was thus not ineffective for failing to contest a faulty jury instruction in this regard. But it cites not a single authority for this erroneous position. The government claims petitioner's resentencing cured any error in his original sentencing caused by his counsel's failing to prepare, but does not

acknowledge that the errors could have been carried over. Finally, the government wrongly claims petitioner admits he is not entitled to any relief as a result of the recent Sentencing Commission reduction of the "crack" penalties. Therefore, petitioner requests that this court grant his Motion to Vacate, Set Aside, or Correct Sentence and order him a new trial with effective counsel and/or provide such other and additional relief as the court may deem just and proper.

DATE: April 4, 2008

Respectfully submitted,

[signature]
Edgar Medina, pro se

# ATTACHMENT

Enclosed please find an affidavit from Ms. Tammy Foster.

# Statement of Tammy Foster

I, **Tammy Foster**, state the following willingly and of my own free will:

On February 7, 2004, I went downstairs to answer a knock at the front door of my apartment. I noticed that there were two police officers awaiting. After opening the door, an officer asked me if he could check for Edgar Medina. My response was that Edgar was not upstairs. He asked again if he could check for Edgar. Again I stated to the officer that he was not upstairs and I did not want my children traumatized by the police entering the apartment. I was asked again for a third time, at which point I felt I could not refuse to lead the officers upstairs to the second floor landing.

Edgar opened the door after I knocked on it. I then heard a knock at the back door to the apartment. I opened the door and observed two more officers. Edgar was arrested and brought downstairs. After Edgar was removed from the apartment, the police started to conduct a search of our bedroom. I never gave any police officer permission to search the apartment, nor did I willingly volunteer police admission into our residence.

After the police conducted their search of the apartment, they explained to me that I was being brought to the police station for questioning. I was then placed in a cell for 1-2 hours before Det. Patridge explained to me that I was a suspect in a crime, that I could lose my children, and potentially be detained in prison for a substantial amount of time if I did not cooperate by making a statement that implicated Edgar as the owner of the drugs and gun.

A couple of months later, I tried to contact John Cicilline, Edgar's lawyer, so that I could explain to him about what occurred on the day Edgar was arrested. Unfortunately, after numerous attempts to contact Mr. Cicilline, I was unable to do so. I was willing to testify in Edgar's behalf, but did not know how to do so other than through Cicilline.

I swear under penalty of perjury, pursuant to Title 28 U.S.C. § 1746, that the foregoing is true and correct.

DATE: 3/31/2008

LaVondria J. Clark
Notary

Tammy Foster
Tammy Foster

North Carolina
Wake County

I, LaDondria J Clark, a Notary Public for said County and State, do here by certify that -----Tammy Foster--------------------------------------------------personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal, this the 31 day of March, 2008.

LaDondria J. Clark
Notary Public
La Dondria J. Clark

My Commission Expires: 11-04-2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2008, I placed in to the official hands of U.S.P. Big Sandy mailroom staff two envelopes, each containing a copy of Petitoner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255 and with first class postage affixed for mailing via U.S. Postal Service. The envelopes were addressed as follows: Staphen G. Dambruch United States Attorney's Office 50 Kennedy Plaza 8th Floor Providence, Rhode Island 02903 and to the United States District Court 1 Exchange Terrace Providence, Rhode Island 02903.

Edgar Medina # 05442-070
U.S.P. Big Sandy
P.O. Box 2068
Inez, KY 41224

Edgar Medina