UNITES STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDGAR MEDIINA                    :
                                 :
vs.                              :          CR No.  04-043-ML
                                 :          (C.A. No.  08-027-ML)
UNITED STATES OF AMERICA   :

## MEMORANDUM AND ORDER

Mary M. Lisi, Chief United States District Judge.

Edgar Medina has filed a *pro se* motion to vacate, set aside or correct sentence pursuant to

28 U.S.C. § 2255 in the above proceeding.  For the reasons that follow, that motion is denied.

### FACTS AND BACKGROUND[1]

On February 7, 2004, the Providence Police responded to a call from Iyonna Washington,

who reported that Edgar Medina had threatened her with physical harm and had just broken the

windshield of her car with a silver gun.  When the officers arrived at the scene, Washington directed

them to a nearby apartment, located on the second floor of 114 Waverly Street, Providence, to which

she said Medina had retreated.  The apartment was rented to Medina's girl friend, Tammy Foster.

When police approached the building, they asked Foster, who was standing at the front, if they could

go into the apartment to apprehend Medina.  Foster initially refused, stating that her children who

were in the apartment would be traumatized by the police, but she then consented and accompanied

the officers to the second floor entrance, which was locked.  According to Medina, after police

knocked several times, Medina opened the door and refused to permit police to enter the apartment.

(See Affidavit of Edgar Medina, dated January 8, 2008 submitted in support of the instant motion to

---

[1]  Except as otherwise indicated, the facts recited herein are drawn from decision of the Court of
Appeals affirming Medina's conviction and remanding for re-sentencing.  See United States v. Medina,
420 F.3d 88, 90 (1st Cir. 2005).

vacate ["Medina Aff."], ¶ 1.) Medina was then arrested and taken downstairs to a police cruiser. The other officer stayed behind and, with Foster's permission, searched the apartment in which Medina had been apprehended. In a bedroom , the officer discovered a Nike shoe box hidden under the bed, which contained a black hand gun, drug processing supplies, and a sizeable quantity of cocaine base, heroin and marijuana packed into small plastic bags. Subsequent tests revealed that several of the plastic bags had Medina's fingerprints on them. The officer also found a number of documents, including state court papers bearing Medina's name, in the bedroom as well.

Medina was indicted on April 7, 2004, on charges that he possessed with intent to distribute over 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii)(Count I); possessed with intent to distribute quantities of heroin and marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and (b)(1)(D) (Counts II -III); and possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count IV).

Throughout all pretrial, trial and initial sentencing proceedings in this Court, Medina was represented by Attorney John M. Cicilline. According to Medina, prior to trial, Attorney Cicilline had agreed to file a motion to suppress the contents of the Nike box and the documents – and in fact requested additional time to file such a motion -- but failed to do so. (Affidavit of Edgar Medina Aff. ¶ 2.)

At trial the Government's witnesses included the officers who arrested Medina at the scene. During the first officer's testimony, the Government sought to introduce the court documents that were found in the apartment. At a sidebar conference , this Court inquired whether Medina would object to this evidence or would seek a limiting instruction concerning this evidence. Counsel declined to take either action, stating that Medina would testify later in the trial. The documents were admitted without any limiting instruction. Medina did not testify at trial. After a three-day

trial, the jury convicted Medina on all counts.

The presentence report (PSR) recommended a sentencing guideline range of 188-235 months for Counts I - III and a statutorily required 60-month consecutive term of imprisonment for Count IV, based on a total offense level of 32 and a criminal history category I.

At the sentencing hearing conducted on November 5, 2004 Attorney Cicilline informed this Court that he had neglected to diary the sentencing date but that he did review the presentence report with Medina earlier that day and that Medina had no objections to the PSR.  (See Transcript of Sentencing Hearing conducted on November 5, 2004 ["Sent. Tr."] at 2-3.)  Attorney Cicilline did object to the Sentencing Guidelines, in order to preserve Medina's right to be re-sentenced in the event that they were declared to be unconstitutional by the U.S. Supreme Court.  (Id. at 3-4.)  After hearing from counsel for both parties and from Medina himself, who admitted that he had done the things for which he was convicted (id. at 13), this Court, noting that Medina was only 19 years old, imposed the minimum sentence under the then-mandatory Guidelines of 188 months imprisonment for the drug offenses, followed by five years of supervised release.  This Court also imposed an additional, statutorily- mandated consecutive sentence of 60 months on the gun possession offense, bringing Medina's total sentence to 248 months – nearly 21 years.  (Id. at 17-18.)

Medina appealed, represented by different counsel, contending the evidence of the documents found in the Nike box were improperly admitted at trial and that this Court had improperly instructed the jury concerning the charge of possession of cocaine base.  He also challenged his sentence as having been imposed under mandatory sentencing guidelines. The Court of Appeals affirmed Medina's conviction, noting that his counsel had waived his right to object to the admission of the documents and that there was no error in the cocaine base jury instruction, but remanded the case for re-sentencing in view of United States v. Booker, 543 U.S. 220 (2005).  See

United States v. Medina, 427 F.3d at 91-93.[2]

On July 25, 2006 this Court re-sentenced Medina, who was represented by still different counsel, to a total of 15 years imprisonment, based on the statutory mandatory minimum sentences for his offenses, followed by five years of supervised release.[3]  Medina again appealed, but the Court of Appeals affirmed his new sentence as imposed.  United States v. Medina, 219 Fed.Appx. 20 (1st Cir. March 28, 2007).  Medina's petition for writ of certiorari was denied by the U.S. Supreme Court on October 1, 2007.  Medina v. United States, 121 S.Ct. 199 (2007).

The Motion to Vacate

Thereafter, Medina timely filed the instant motion to vacate, in which he raises several claims of ineffective assistance on the part of his trial counsel.  He asserts that his counsel:

(1)    failed to file a pretrial motion to suppress the contents of the Nike box;

(2)    refused to object to the admission at trial of documents evidencing prior bad acts, prior convictions and criminal cases pending against him;

(3)    failed to object to this Court's jury instruction regarding the standard of proof required for the charge of possession of a firearm in furtherance of a drug offense was sufficient to convict him under § 924(c)(1)(A);

(4)    failed to adequately prepare for sentencing and to review the presentence report (PSR) with Medina before the day of sentencing;  and

(5)    labored under a conflict of interest that deprived Medina of conflict-free counsel, as counsel himself was being investigated for unrelated violations of law ongoing during his representation of Medina, for which counsel was ultimately indicted.

_____

[2]   As part of his direct appeal, Medina also argued that his trial counsel rendered ineffective assistance, but the Court of Appeals deferred consideration of that claim until it was first raised in a postconviction application.  Medina, 427 F.3d at 90-91.

[3]   The actual terms of imprisonment imposed on re-sentencing were: 120 months imprisonment on Counts I and II, 60 months imprisonment as to Count III, to run concurrently with the sentence on Counts I and II, and 60 months imprisonment on Count IV, to be served consecutively to the 120-month sentence on Counts I and II.  See Judgment dated July 25, 2006 at 3.  Each of these terms were the minimum penalties required by the applicable offense statutes.  See 21 U.S.C. §§ 841(b)(1) and 18 U.S.C. § 924(c).

Medina further claims that he is entitled to a two-point reduction in offense level in light of the U.S. Sentencing Guidelines Commission's recent reduction of the base offense level for crack cocaine offenses. The Government has filed an opposition to the motion to vacate; Medina has filed a reply and additional exhibits, including an Affidavit and documents purporting to be sworn statements of Tammy Foster and Iyonna Washington. This matter is ready for decision.[4]

## DISCUSSION

A.      General Principles

Title 28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the  sentence.

28 U.S.C. §2255(a).

Generally, the grounds justifying relief under §2255 are limited.  A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotes omitted).

---

[4] No hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit.  See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted).  See also Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing required where the district judge is thoroughly familiar with the case).

Moreover, a motion under § 2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" -- or, alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). See also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

B.      Ineffective Assistance Claims

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)     That his counsel's performance fell below an objective standard of reasonableness; and

(2)     [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

In assessing the adequacy of counsel's performance, the Court looks to 'prevailing professional norms.' All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688). To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of trial would have been different. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Strickland, 466 U.S. at 695).

Here, none of Medina's ineffective assistance claims has merit.

1.    Failure to File Motion To Suppress

Medina first claims that his counsel's failure to file a pretrial motion to suppress challenging the legality of the search of the 114 Waverly Street apartment constituted ineffective assistance. He contends that counsel agreed to file a motion to suppress based on Medina's objection to the search and in fact obtained an extension of time to do so from this Court but that counsel then failed to file any such motion.

Where defense counsel's failure to litigate a Fourth Amendment claim competently is the basis of an ineffective assistance claim, a petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). "[T]he initial inquiry [as to such a claim] is whether the Fourth Amendment objection was so obvious and promising that no competent lawyer could have failed to pursue it." Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999). As part of the determination, a court should examine what defense counsel knew or should have known at the time he made and implemented his choices. See United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998). In addition, where a defendant brings a motion to suppress evidence obtained from a claimed consensual search, the Government must show by a preponderance of the evidence that consent was voluntarily given. United States v. Marshall, 348 F.3d 281, 285-86 (1st Cir. 2003).

Given the then-existing law and the circumstances of the search, Medina's counsel could have reasonably concluded that a motion to suppress would not have been likely to succeed. Under case law prevailing prior to Medina's trial in August 2004, a warrantless entry and search of premises was valid under the Fourth Amendment where police obtained the voluntary consent of an

occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained. Illinois v. Rodriguez, 497 U.S. 177 (1990); United States v. Matlock, 415 U.S. 164 (1974)). First Circuit law was to the same effect. See United States v. Donlin, 982 F.2d 31, 33-34 (1st Cir. 1992) (upholding a warrantless entry and seizure where wife consented to police entry of apartment she shared with defendant husband in order to retrieve personal belongings during a domestic dispute, over objection of defendant who was physically in the apartment and who was intoxicated and possessed a shotgun).

Here, the police had two plausible bases on which to search Foster's apartment immediately after arresting Medina, based on what the officers then knew. First, Foster expressly consented to the officers' search of the apartment. This was sufficient under then-existing law, irrespective of any objection by Medina. See e.g. Matlock, 415 U.S. at 170; Donlin, 922 F.2d at 33-34.

Medina contends that he objected to the search of Foster's apartment at the time of his arrest and that this objection invalidated the search under Georgia v. Randolph, 547 U.S. 103 (2006). Randolph concerned the search of a residence occupied by two or more persons that was conducted without a warrant but with the consent of one co-occupant. The Supreme Court held that the refusal to consent of the other co-occupant, who was physically present at the outset of the search, "render[ed] the warrantless search unreasonable and invalid as to him." Id. at 106. However, the Randolph decision was rendered nearly two years after Medina's prosecution, and was not available to his counsel – or even reasonably presaged in the case law – at the time the motion to suppress was being considered. Indeed, the Supreme Court noted that all four federal appellate courts, including the First Circuit, that had previously considered that question, had upheld such searches over the objection of a physically present co-occupant. Id. at 108, n. 1 (citing Donlin, 922 F.2d at 33).

Moreover, there was no evidence at trial that Medina actually objected to the search -- the

only indication in the record is contained in Medina's affidavit filed in connection with the instant postconviction motion to vacate.[5] The evidence at trial – chiefly the testimony of the arresting police officers – was that although Medina initially refused to open the entrance door, he ultimately did and was quickly handcuffed and escorted downstairs to a patrol car. See e.g. Transcript of Trial, Day One, conducted on August 12, 2004 ["Trial I Tr."] at 29-30.) There was no mention at trial of any objection by Medina to a search of the apartment or that any consent to search was sought from him.

Second, even apart from consent, the search was lawful in light of the exigent circumstances existing at the time it commenced.  Under then-existing law as expressed by the First Circuit, "[e]xigent circumstances exist where law enforcement officers confront a compelling necessity for immediate action that [would] not brook the delay of obtaining a warrant." United States v. Tibolt, 72 F.3d 965, 969 (1st Cir.1995) (citing cases) (internal quotations omitted).  Exigent circumstances that justify the warrantless search of a residence commonly include "'a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to [an occupant].'" Id. (quoting Hegarty v. Somerset Cty., 53 F.3d 1367, 1374 (1st Cir. 1995), cert. denied, 516 U.S. 1029 (1995)). See United States v. Torres, 274 F. Supp.2d 146, 154 (D.R.I. 2003) (same).  Moreover, "[t]he determination of whether an exigency exists sufficient to justify the warrantless entry of a home is a fact intensive one, and is 'limited to the objective facts reasonably known to, or discoverable by, the officers at the time of the search.'" Torres, 274 F.Supp.2d at 154 (quoting Tibolt, 72 F.3d at 969, in turn citing Rodriguez, 497 U.S. at 186).

Here, officers had been told by Washington that Medina had smashed her car windshield with a handgun and had fled to Foster's apartment.  Further, upon encountering Foster, police were told

---

[5]   The letter Medina sent to his counsel prior to trial (copy attached to Medina Aff.) concerning his desire to file a motion to suppress asserted there was 'no probable cause' for the search but made no reference to any objection he made to the officers' entry into the apartment at the time of his arrest.

that there were children in that apartment.  Thus, the officers would have had a reasonable basis for

conducting a search of the apartment in order to secure any firearm for the protection of its

occupants, irrespective of Foster's consent.[6]

In short, the search was lawful either as a consensual search or in light of the exigent

circumstances, and this Court cannot say that a motion to suppress would have been so obvious and

promising that no competent attorney would fail to pursue it.[7]  Thus, this Court finds that trial

counsel's failure to file a pretrial motion to suppress did not constitute objectively deficient

performance.  This is so even if counsel had initially considered filing such a motion but then

reconsidered.

In view of this finding, this Court need not explore whether Medina was prejudiced by the

non-filing of the motion to suppress, apart from noting that, as discussed above, it is unlikely that

the motion would have succeeded.  See United States v. Caggiano, 899 F.2d 99, 102 (1st Cir. 1990)

("If the searches and seizures were valid, then (defendant's) fourth amendment claim is meritless,

and he can show no prejudice…"), abrogated on other grounds in Horton v. California, 496 U.S. 128

(1990).

---

[6]  For the same reason, United States v. Torres, cited by Medina, does not help him.  In that case,
the district court suppressed evidence of drugs found in a residence, finding that drug agents'
"generalized fear" that one drug dealer would destroy evidence of drugs if he found out about another
dealer's arrest did not establish exigent circumstances, absent specific evidence that the dealer would
destroy evidence, and that the further exigent circumstances on which the search was based were created
by the police officers involved.  274 F.Supp.2d at 156.  That was not the case here, where, the police
officers had specific information that Medina had fled with a firearm to a residence where minor children
were present and an immediate search of the premises was appropriate in order to locate and secure the
firearm for the protection of those minors.  See also United States v. Martins, 413 F.3d 139, 147 (1st Cir.
2005) ("…the police, in an emergency situation, may enter a residence without a warrant if they
reasonably believe that swift action is required to safeguard life or prevent serious harm").

[7]  The affidavits of Washington and Foster submitted in this proceeding and purporting to
disavow their prior statements and consent do not change this result, as the critical inquiry is the officers'
reasonable belief at the time of their decision to conduct the search – both as to the existence of Foster's
consent and exigent circumstances.  See Tibolt, 72 F.3d at 969 (citing Rodriguez, 497 U.S. at 186).

2.     Failure to Object to Admission of Documents

Medina further claims that his counsel's failure either to object to the admission of certain court documents or to request a limiting instruction regarding those documents constituted ineffective assistance.  The documents were found in the bedroom with the gun and drugs, bore Medina's name, and referenced other criminal proceedings against him, indicating that Medina had previously been in trouble for "evading police" and listing various fees and fines assessed against him as a result.[8]  At trial the Government sought to introduce the documents in an effort to demonstrate that the gun and drugs in the Nike box belonged to Medina.  Prior to their introduction this Court conducted a sidebar conference, during which the Court inquired whether defense counsel intended to object to the documents or wished to seek a limiting instruction as to this evidence. Counsel declined the invitation to object and the Court's offer to give the jury a limiting instruction with respect to the evidence admitted, stating as to the latter, "Judge, it's going to come out. [Medina is] going to take the stand."[9]

On direct appeal Medina claimed that the admission of the documents at trial was barred under Fed.R.Evid. 404(b).  The Court of Appeals held that this argument had been waived by Medina, through counsel's "persistent and reasoned refusal of the judge's suggestions." Medina, 427 F.3d at 91.  The court also noted that "whether counsel's decision was competent is of course another

---

[8]  Although the decision affirming Medina's conviction refers to the documents as being located in the Nike box, see Medina, 427 F.3d at 91, there was evidence at trial that court documents pertaining to Medina were also discovered in a bureau in the same bedroom. (See Trial I Tr. at 35-41, 58.)  This discrepancy does not impact the outcome here.

[9]  The actual sidebar colloquy was as follows:

THE COURT:  You have no objection to these coming in?
MR. CICILLINE:   I have no objection to them coming in.
THE COURT:  Do you want a cautionary instruction? It appears to me it talks about the findings --
MR. CICILLINE:  Judge, it's going to come out. He's going to take the stand.
THE COURT:  Okay.  All right.  I just want to make sure we're on the same wavelength.
(Trial I Tr.  at 38.)

matter," to be addressed in a § 2255 proceeding, "if Medina chooses to pursue it." Id. at n. 2.

Medina now asserts that he and his counsel never discussed whether he would testify at trial and that counsel should have objected to the admission of the documents under both Fed. R. Evid. 403 and 404(b),[10] since the documents tended to show a propensity to 'evade police' and commit a crime and thus were prejudicial to him.

As noted above, counsel's actions at trial concerning the admission of Court documents is subject to a wide range of discretion and may not be reviewed in hindsight. Strickland, 466 U.S. at 688. The record here shows that, at least at the time of the sidebar conference, counsel believed that Medina would testify at trial. Presumably, Medina would have explained the documents. The fact that this expectation did not materialize and Medina did not testify does not mean that counsel's failure to object to the admission of the court documents or to seek a limiting instruction was objectively deficient.

Moreover, even if counsel's performance could be deemed objectively deficient as to this matter, there was no prejudice to Medina. First, this Court would likely have admitted the documents pursuant to Fed. R. Evid. 404(b).[11] The issue thus narrows to counsel's failure to request a limiting instruction on them. As demonstrated during the prosecutor's closing argument (see Trial

---

[10] Fed. R. Evid. 403 provides in pertinent part:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... ."
Fed. R. Evid. 404 provides in pertinent part:

> (b) Other Crimes, Wrongs, or Acts.– Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[11] Under the two-prong test for determining admissibility pursuant to Rule 404(b), see e.g. United States v. Devin, 918 F.2d 280, 286-87 (1st Cir. 1990), the documents were relevant to showing Medina's knowledge and ownership of the other contents of the Nike box and, as noted above, the prejudice resulting from their admission did not outweigh their probative value.

Tr. III at 7-12) , the Government's purpose in introducing the state court documents was to show Medina's knowledge and control over the gun and drugs in the box rather than Medina's bad character or propensity to commit other crimes -- which is precisely what a limiting instruction would have provided.  Moreover, there was ample other physical evidence linking Medina with the drugs -- namely, the fingerprints found on several of the glassine bags found in the Nike box – which the prosecutor emphasized during closing as much as, if not more than, the court documents. (Id. at 12-15)  Accordingly, this Court concludes that the outcome of Medina's trial would not have been different had counsel either objected to the documents or had a limiting instruction been given. See Strickland, 466 US at 692, and this ineffective assistance claim must fail.

      3.     <u>Preparation for Sentencing Hearing</u>

      Medina further claims that his trial counsel failed to prepare adequately for Medina's sentencing hearing and, specifically, that counsel failed to request a downward departure and to hire a mental health expert in support of that request.  He points to counsel's statement to this Court that he had not been aware of the sentencing date prior to the morning of the sentencing hearing and to the fact that counsel did not review the PSR with him until that same morning, contending that counsel's performance was objectively deficient and prejudicial to him.

      An attorney's preparation for sentencing, like other aspects of criminal defense, is "measured against an objective standard of reasonableness . . . under prevailing professional norms." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380 (2005) (quoting <u>Strickland</u>, 466 U.S. at 688)(internal quotation marks and further citations omitted).   Whether counsel's performance is adequate is measured by "'counsel's perspective at the time' investigative decisions are made . . . and by giving a 'heavy measure of deference to counsel's judgments,'" <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 689, 691).

      Medina has not shown that counsel's failure to request a downward departure and to retain

an expert to investigate Medina's family history and mental health background constituted objectively deficient performance. Much of the mental health information that Medina points to in his motion to vacate was presented in the PSR, which his counsel reviewed and highlighted at sentencing. (Sent. Tr. at 9-10.) Nor is there anything in the record to suggest this Court would have granted a downward departure even if counsel had obtained and proffered an expert. Thus, this Court cannot say that counsel's performance constituted ineffective assistance in the circumstances. See Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000) (noting that "[d]efense counsel is allowed to make strategic decisions, within the wide bounds of professional competence" as to which areas to focus his energies).

Moreover, although it would have been preferable for counsel to have consulted with Medina prior to the day of sentencing, Medina has not shown any prejudice flowing from counsel's failure to do so. Medina does not point to any objections to the PSR that his counsel failed to make. Moreover, as the Government points out, at the initial sentencing hearing Attorney Cicilline made a point of preserving Medina's objection to the use of the then-mandatory Sentencing Guidelines (Sent. Tr. at 3) – an objection which ultimately resulted in Medina's obtaining a lower sentence on re-sentencing.[12]

Thus, Medina's ineffective assistance claim based on his counsel's alleged failure to prepare for the sentencing hearing is without merit.

---

[12]    Medina's reliance on Rompilla as support for this claim is misplaced. In Rompilla, defense counsel received materials containing both aggravating and mitigating facts in preparation for Rompilla's capital sentencing hearing for second-degree murder. Counsel was aware that the prosecution planned to introduce court records pertaining to a prior conviction but did not examine those materials. Id. at 379-80. The Supreme Court held that a "lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on." Id. at 374. Here, by contrast, virtually all of the information presented by the Government at Medina's sentencing was contained in the PSR, which counsel did review with Medina prior to the sentencing hearing.

4.      Failure to Object to Jury Instructions

Medina further claims that his trial counsel was ineffective because he failed to object to jury instructions regarding the possession of a firearm in furtherance of a drug related offense. He contends that this Court's instruction to the jury that he could be convicted for constructively possessing a gun -- rather than using or carrying a gun -- in furtherance of a drug offense (Trial III Tr. at 52-53) was erroneous, citing Bailey v. United States, 516 U.S. 137 (1995). In Bailey the Supreme Court held that the mere possession of a firearm with drugs was not enough to prove the "in furtherance of" element of the offense under 18 U.S.C. § 924(c)(1).

This claim fails to take into account that the Bailey decision was overturned by statute. In 1998 Congress amended 18 U.S.C. § 924(c)(1)(A) to provide a mandatory minimum consecutive sentence for anyone who, in furtherance of drug related offenses "possesses a firearm ...." Pub.L. 105-386 (1998) (codified at 18 U.S.C. § 924(c)(1)(A)).[13]  The First Circuit has construed this amendment broadly. In United States v. Luciano, 329 F.3d 1 (1st Cir. 2003), the Court held that the storage of a firearm and ammunition in the same crawl space as drugs provided the requisite nexus between the drugs and the firearm to sustain a violation of § 924. Id. at 6 (given the close proximity of the firearms to the drugs, "we have no difficulty concluding that there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under § 924."). Id. See also United States v. Grace, 367 F.3d 29, 34-35 (1st Cir. 2004) (same); United States v. Garner, 228 F.3d 78 (1st Cir.), cert. denied, 540 U.S. 1084 (2003) (same).

The foregoing is dispositive of the instant claim. Here, the gun was found with the drugs, in the same Nike box under the bed. Thus, any objection by Medina's counsel to this Court's

---

[13]    Medina's indictment tracked the language of §924(c)(1)(A) as amended, charging that Medina "in furtherance of a drug trafficking offense . . . did knowingly and intentionally *possess* a firearm . . . ." See Indictment, Count IV (emphasis added).

instruction would have been futile, and counsel may not be deemed ineffective for failing to raise

or pursue it. See United States v. Cronic, 466 U.S. 648, 657, n.19 (1984); Vieux v. Pepe, 184 F.3d

59, 64 (1st Cir. 1999)(counsel not required to pursue futile tactic or claim).

     5.    Conflict of Interest

     In his final ineffective assistance claim, Medina asserts that his trial counsel had a conflict

of interest because his counsel was subsequently charged with unrelated offenses, including

conspiracy, obstruction of justice and false statements. He contends that since his counsel's alleged

criminal activities were ongoing at the time of Medina's pretrial proceedings and trial, counsel had

"divided loyalties" and thus could not adequately defend him.

     "[A] defendant has not shown a fatal conflict by showing only that his lawyer was under

investigation [for criminal activity] and that the lawyer had some awareness of an investigation."

Reyes-Vejerano v. United States, 276 F.3d 94, 99 (1st Cir. 2002). Rather, where a defendant alleges

ineffective assistance on the part of counsel based on a conflict of interest, the onus is on the

defendant to prove an adverse effect on his lawyer's performance. Id. (citing Cuyler v. Sullivan, 446

U.S. 335 (1980).

     Here, Medina's claim fails on at least two fronts.   First, Medina makes no showing that

Attorney Cicilline was even aware at the time of his representation of Medina that Cicilline himself

was under investigation for criminal activity.   Indeed, Attorney Cicilline's indictment was not

returned until more than two years after Medina's trial and conviction.[14]   Second, Medina makes no

showing that, even assuming there was an ongoing criminal investigation of Attorney Cicilline, such

investigation impacted Cicilline's decisions not to file a motion to suppress and not to object to the

---

[14]   This Court is aware that Attorney Cicilline has recently pled guilty to the indictment in the
U.S. District Court for the District of Massachusetts.  This fact does not impact this Court's analysis
here.

admission of the court documents or otherwise had an adverse effect on Cicilline's performance on behalf of Medina. Absent any of these showings, this Court is "left with sheer speculation, and that is not enough." Id. (citing United States v. Canessa, 644 F.2d 61, 63-64 (1st Cir. 1981)).[15]

Medina's further argument that Attorney Cicilline's interest in pursuing his own criminal activities somehow conflicted with his duty to represent Medina is likewise unsupported by evidence and therefore devoid of merit.

B.    Retroactive Application of Guideline Amendments

Medina's final claim is that he is entitled to a reduction in his sentence based upon the recent retroactive amendments to the Sentencing Guidelines with respect to offenses involving crack cocaine which effectively reduce the penalties for crack cocaine. See USSG, Amendments 706, 711and 715 (amending USSG § 1B1.10 and § 2B1.1). He contends that these amendments should warrant the application in his own case of the five-year mandatory minimum penalty under his offense statute, rather than the ten-year mandatory minimum penalty. Compare 21 U.S.C. §841(b)(1)(A)(iii) with § 841(b)(1)(B)(iii).

This claim requires no discussion and is patently erroneous. The Guideline amendments reducing the disparity between crack cocaine and powder cocaine have no impact on the applicability of the mandatory minimum statutory penalty for his drug offense. See United States v. Ganun, 2008 WL 4823091 (1st Cir. Nov. 7, 2008) (rejecting argument that the same concerns that prompted the Sentencing Commission to lower the base offense level for cocaine base offenses should also result in reductions in the statutory mandatory minimums, because "the Sentencing Commission is without

---

[15]   The case of United States v. Cancilla, 725 F.2d 867 (2d Cir. 1984), on which Medina relies, is inapposite. There, the court found that a per se conflict of interest existed where defense counsel had, unknown to defendant, engaged in the same types of insurance fraud schemes for which defendant had been convicted. That is simply not the case here. Moreover, as discussed above, there was no ineffective assistance on the part of counsel in representing Medina.

power to determine statutory minimums."). See also U.S.S.G. § 1B1.10, Application Note 1(A) ("a reduction in the defendant's term of imprisonment is not authorized and is not consistent with the Guidelines if "the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of [a] ... statutory provision ( e.g., a statutory mandatory minimum term of imprisonment)."

This Court has considered Medina's other arguments and finds then to be without merit .

CONCLUSION

In view of the foregoing considerations, Medina's motion to vacate under § 2255 is hereby DENIED and dismissed.


SO ORDERED:

Mary M. Lisi
Chief United States District Judge

November 2/, 2008